■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EUGENE HOLMAN, Appellant.—Judgment, Supreme Court, New York County (James Leff, J.), rendered July 12, 1984, convicting defendant of six counts of robbery in the first degree, one count of attempted robbery in the first degree, and one count of attempted grand larceny in the first degree, and sentencing him, as a second violent felony offender, to three consecutive indeterminate terms of imprisonment of 12½ to 25 years on three of the first degree robbery counts, to run consecutively to three concurrent indeterminate terms of imprisonment of 12½ to 25 years on the three remaining first degree robbery counts, to run consecutively to concurrent indeterminate terms of imprisonment of 7½ to 15 years and 3½ to 7 years on the attempted robbery in the first degree and attempted grand larceny in the first degree, resulting in a combined indeterminate sentence of 57½ to 115 years, modified, on the law and as a matter of discretion, to provide that the first three consecutive 12½ to 25 year sentences shall run concurrently with each other, and that the concurrent sentences for attempted robbery in the first degree and attempted grand larceny in the first degree shall also run concurrently with the three concurrent sentences for robbery in the first degree, resulting in a total indeterminate sentence of 25 to 50 years, and as so modified, affirmed.

During the period September 5 to September 27, 1983, the defendant robbed or attempted to rob, at gunpoint, three massage parlors and two establishments catering to masochists. He was positively identified by eight witnesses, six of whom had previously identified him at lineups.

Prior to trial, defendant moved pursuant to *People v Sandoval* (34 NY2d 371), to preclude the People from cross-examining him regarding his past criminal convictions. In 1974, the defendant had been convicted after trial of a September, 1972 robbery, and he thereafter pleaded guilty to another robbery which covered an additional eleven robbery arrests accumulated in August and September of 1972. The prosecutor sought a ruling permitting defendant to be questioned, if he testified in his defense, with respect to the facts of each of the thirteen robberies, urging they were dissimilar from the crimes for which the defendant was standing trial, in that he had committed them aided by another individual, and they had involved the robbery of law, accounting and insurance firms. The trial court precluded inquiry only with respect to a Y.O. adjudication in 1967 and misdemeanor conviction for jostling in 1968, and granted, *in toto,* the prosecutor's application to permit inquiry as to the underlying facts of the thirteen robbery convictions.

We find that the trial court either abused its discretion, or exercised none at all, but we decline to reverse in view of the overwhelming evidence of defendant's guilt. *(Compare, People v Williams,* 56 NY2d 236.) We see no reasonable possibility that the jury would have acquitted the defendant on his purported defense of duress, in that he was, according to his confession, "into the Harlem Kingpins for money and was going to work the tab off." They gave him instructions on the phone. He would rob the places and leave the money where he was told.

The sentence imposed by the trial court should be reduced in accordance with Penal Law § 70.30 (1) (c) (iii) which provides that "the aggregate maximum term of consecutive sentences imposed for the conviction of three or more violent felony offenses committed prior to the time the person was imprisoned under any of such sentences and one of which is a class B violent felony offense, shall, if it exceeds fifty years, be deemed to be fifty years". The statute also provides in clause (i): "Where the aggregate maximum term of two or more consecutive sentences is reduced by calculation made pursuant to this paragraph, the aggregate minimum period of imprisonment, if it exceeds one-half of the aggregate maximum term as so reduced, shall be deemed to be one-half of the aggregate maximum term as so reduced". While the trial court's sentence was not "illegal" *(People v Moore,* 61 NY2d 575), we see no reason to permit such an excessive sentence to remain intact subject to recalculation by the Department of Correc-

tional Services pursuant to the Statute. Aside from the statutory limitation, we deem the sentence excessive to the extent indicated. We have considered the other issues raised by defendant and find them to be without merit. Concur—Murphy, P. J., Kupferman and Ross, JJ.

Ellerin and Smith, JJ., dissent in a memorandum by Smith, J., as follows: I agree with the majority that the evidence of defendant's guilt of the robberies is overwhelming. Nevertheless, if *People v Sandoval* (34 NY2d 371 [1974]) and *People v Williams* (56 NY2d 236 [1982]) have any meaning, reversal is required.

The *Sandoval* decision authorized a defendant to move to limit testimony concerning prior convictions or bad acts which the prosecution could bring out if a defendant chose to take the stand. Here, the defendant made a *Sandoval* motion. Apparently, no effort was made by the prosecutor to question the defendant about a 1967 youthful offender conviction for burglary in the third degree or a 1968 misdemeanor conviction for jostling. The prosecutor did, however, seek to question the defendant about a 1974 conviction for robbery for which defendant was sentenced to seven to twenty years in prison and another 1974 conviction following a plea of guilty. This latter conviction covered eleven other alleged robberies which allegedly occurred in August and September 1972. In addition to the two 1974 convictions, the prosecutor sought to question defendant about each of the eleven robberies covered by the 1974 plea.

As the majority concludes, the court either abused its discretion in permitting the prosecutor to question defendant about all of the robberies, including the eleven covered by the plea, or exercised no discretion at all. In *People v Williams (supra),* the Court of Appeals reversed a conviction and remanded a case for a new trial where the court permitted cross-examination on 20 of 23 convictions should the defendant take the stand.

There is some indication here that defendant was asserting the affirmative defense of duress *(see,* Penal Law § 40.00), since in a statement to the police he declared that he owed money to certain "Harlem King Pins" and was being directed as to what to rob and where to leave the money. We cannot speculate, however, as to whether defendant would have testified had the *Sandoval* ruling been different or what his testimony might have been. In *People v Williams (supra,* at 240-241) the Court of Appeals stated:

"Although the Appellate Division unanimously determined that there was an abuse or nonexercise of discretion by the trial court, the majority nonetheless held the error to be harmless. The majority concluded (82 AD2d 734, 735, *supra)* that because at least some of defendant's prior convictions would have formed a proper basis for cross-examination, 'it does not appear to us that defendant would have taken the stand under any circumstances'. The determination of harmlessness was incorrect.

"Harmless error analysis does not involve speculation as to whether a defendant would have testified if the legal error had not occurred *(People v Shields,* 46 NY2d 764, 765; cf. *People v Grant,* 45 NY2d 336, 378-380). Speculation about what the defendant might have done had the circumstances been different can never be more than just that—speculation."

Accordingly, reversal is required.